UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRIS CHISHOLM, *et al.*,
Plaintiffs,

-v-

BBC GLOBAL NEWS US, LLC,
Defendant.

26-CV-809 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Chris Chisholm, Govind Ramabadran, Serge Belozerov, Kenneth Sale, and David Ramirez (collectively, "Plaintiffs") bring this putative class action against Defendant BBC Global News US, LLC ("BBC"), asserting claims under the Wiretap Act, 18 U.S.C. § 2510, *et seq.*; the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA"); the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 638 ("CIPA"); the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); and the New York General Business Law, N.Y. Gen. Bus. Law §§ 349-50 ("GBL"), as well as common-law claims for intrusion upon seclusion, fraud, and unjust enrichment. (*See generally* ECF No. 30.)

Before the Court is BBC's motion to dismiss the Amended Complaint. (*See* ECF No. 33.) For the reasons that follow, that motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiffs' Amended Complaint and are presumed true for the purpose of BBC's motion to dismiss. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam).

BBC owns and operates its website (the "Website"), which provides access to entertainment content to its patrons. (ECF No. 30 ("AC") ¶¶ 2, 113.) The Website allows

visitors to browse and access a variety of multimedia content, such as news articles, photos, videos, and other digital content. (*Id.* ¶ 2.) BBC sells and delivers prerecorded audiovisual materials through the website. (*Id.* ¶ 4.) Visitors may subscribe to the Website by providing an email address or by paying a fee. (*Id.*) Subscribers gain access to additional content from the Website and BBC. (*Id.*)

The Website's privacy settings advise that BBC may share visitors' personal information collected through cookies and other means with certain entities to target advertising, as well as other activities that may constitute a "sale" of personal information. (*Id.* ¶¶ 4, 115-117.) Those privacy settings represent that visitors may exercise some control over the Website's sharing, such as, for example, clicking on a button labeled "Do not sell or share my personal information." (*Id.* ¶¶ 4, 118-119.) However, the Website embeds tracking tools, such as tracking cookies, on a visitor's browser that immediately activate upon loading the Website. (*Id.* ¶¶ 3, 107, 114.) Thus, a visitor's data is tracked before the visitor may opt out of having their information sold or shared to third parties. (*Id.* ¶¶ 3, 120.)

Even after visitors toggle off the distribution of their personal information and reject all non-required cookies, the Website continues to transmit their data via third-party tracking tools to advertising and analytics companies, including Piano, ScoreCard, and Google Ads (the "Tracking Entities"). (*Id.* ¶¶ 5, 73-106.) This tracking information captures visitors' interactions with the Website, including whether they engage with certain links, forms, search bars, and other on-page elements. (*Id.* ¶ 6.) BBC also shares characteristics inferred from visitor behavior, such as the visitor's age and preferences, as well as personal and device identifiers, such as device type, browser type, email addresses, and geolocation data based on the visitor's IP address. (*Id.*)

Plaintiffs allege that the Website's privacy settings materially mislead visitors about the use and sale of their data by representing that visitors may prevent visitor data tracking and failing to disclose that visitors' information would be captured and distributed without their affirmative consent. (*Id.* ¶¶ 7-9, 121-122.) Plaintiffs allege that, contrary to those representations, visitor data is transmitted to the Tracking Entities even after visitors opt out of the sharing of their information and reject non-essential cookies. (*Id.* ¶¶ 123-125.) Plaintiffs were not aware that their interaction data with the Website was being shared because BBC did not provide notice or seek consent prior to collecting and distributing that information, despite the fact that Tracking Entities such as Piano and ScoreCard advised website operators such as BBC that the use of their tracking tools requires notice and valid consent. (*Id.* ¶¶ 126-131.)

**B. The Plaintiffs, the Putative Class, and the Putative Subclasses**

There are five named Plaintiffs in this action. (*Id.* ¶¶ 11-15.) Each of them visited the Website in January 2026 to browse digital content, such as entertainment and news articles. (*Id.* ¶ 8.) Each Plaintiff "also visited the Website more recently in connection with the investigation underlying this action." (*Id.*) In doing so, each Plaintiff clicked on the "Do not sell or share my personal information" option on the Website. (*Id.*) Nevertheless, BBC continued to collect and disclose Plaintiffs' personal information to the Tracking Entities. (*Id.*)

Plaintiff Chris Chisholm is a citizen of Alaska, and he has been a paid subscriber of BBC for about five years. (*Id.* ¶ 11.) Plaintiff Govind Ramabadran is a citizen of California, and he is a newsletter-subscriber to BBC, meaning that he provided his email address in exchange for news updates from BBC. (*Id.* ¶ 12.) Plaintiff Serge Belozerov is a citizen of Massachusetts, and he is also a newsletter-subscriber to BBC. (*Id.* ¶ 13.) Plaintiff David Ramirez is a citizen of California, and he "created and maintains a registered user account with BBC, thereby establishing a formal relationship with [BBC]." (*Id.* ¶ 14.) Finally, Plaintiff Kenneth Sale is a

citizen of New York, and he regularly uses the Website to read articles and watch videos and has a free registered account with BBC through his email address. (*Id.* ¶ 15.)

Plaintiffs bring this action individually and on behalf of a putative class and several putative subclasses. (*See id.* at 1.) In particular, the broader putative class consists of "[a]ll persons in the United States who visited the Website that had their Sensitive Information improperly disclosed to third parties through the use of the Tracking Tools." (*Id.* ¶ 156.) Plaintiffs also bring claims on behalf of putative subclasses delimited by the residence of potential class members—namely, the "California Subclass" and the "New York Subclass." (*Id.*) Finally, Plaintiffs define a "Subscriber Subclass" as "[a]ll persons who subscribed to the BBC and subsequently watched videos on the Website that had their Sensitive Information improperly disclosed to Tracking Entities through the use of the Tracking Tools." (*Id.*)

### C. Procedural Background

Plaintiffs Chisholm, Ramabadran, Belozerov, and Ramirez filed their original complaint on January 30, 2026. (ECF No. 7.) On May 1, 2026, BBC filed a motion to dismiss the original complaint. (ECF No. 23.[1]) On June 1, 2026, Plaintiffs filed a letter motion seeking leave to file an amended complaint that, *inter alia*, added Plaintiff Sale, removed certain statutory claims, and clarified its allegations related to the tracking software employed by BBC. (ECF No. 27.) BBC consented to Plaintiffs' leave to amend. (*Id.*) On June 2, 2026, the Court granted Plaintiffs leave to so amend. (ECF No. 28.)

---

[1] The Court denies the motion to dismiss the original complaint (ECF No. 23) as moot in light of the filing of the Amended Complaint and BBC's subsequent motion to dismiss the Amended Complaint. *See, e.g.*, *Markovic v. Milos Hy, Inc.*, No. 22-CV-1412, 2023 WL 4763807, at *14 n.8 (S.D.N.Y. July 26, 2023).

On June 5, 2026, Plaintiffs filed their Amended Complaint. (AC.) On July 17, 2026, BBC filed a motion to dismiss the Amended Complaint (ECF No. 33), accompanied by a memorandum of law (ECF No. 34 ("Mem.")). On August 17, 2026, Plaintiffs filed their opposition to the motion to dismiss (ECF No. 37 ("Opp.")), and BBC filed its reply in further support of the motion to dismiss on September 11, 2026 (ECF No. 39 ("Reply")). On September 15, 2026, Plaintiffs filed a notice of supplemental authority in further support of their opposition to the motion to dismiss. (ECF No. 41.) On October 1, 2026, BBC filed a letter in response to Plaintiffs' notice of supplemental authority. (ECF No. 42.) On October 19, 2026, Plaintiffs filed a letter-motion for leave to file a surreply in further opposition to the motion to dismiss (ECF No. 44), accompanied by their proposed surreply (ECF No. 44-1 ("Surreply")). BBC filed a letter opposing Plaintiff's letter motion for leave on October 20, 2026. (ECF No. 45.) On October 23, 2026, Plaintiffs filed an additional notice of supplemental authority. (ECF No. 46.) BBC filed a letter in response to Plaintiffs' additional notice of supplemental authority on November 3, 2026. (ECF No. 47.)

## II. Legal Standards

### A. Rule 12(b)(1): Standing

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim must be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(b)(1). To survive a motion to dismiss for lack of standing, a plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). An injury in fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *TransUnion*, 594 U.S. at 417 (quoting *Spokeo*, 578 U.S. at 340-41).

The plaintiff bears the burden of establishing his standing by a preponderance of the evidence. *See Makarova*, 201 F.3d at 113. "In assessing the plaintiff's assertion of standing, [courts] accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.à.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (cleaned up).

**B. Rule 12(b)(6): Failure to State a Claim**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not sufficiently state a claim to survive a motion to dismiss. *Id.* The Court must accept as true all well-pleaded factual allegations, "drawing all reasonable inferences in favor of the plaintiff," *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012), but the Court shall not "accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### C. Rule 9(b): Heightened Pleading Standard

"Claims sounding in fraud must satisfy the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b)." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). "Under Rule 9(b)'s particularity requirement, the plaintiff must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* (quotation marks omitted). "Rule 9(b) also requires plaintiffs to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 156 (S.D.N.Y. 2022) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

## III. Discussion

BBC moves to dismiss the Amended Complaint on the following grounds: (1) Plaintiffs fail to state a claim under the VPPA; (2) Plaintiffs lack standing for their remaining claims; (3) Plaintiffs fail to state a claim under the Wiretap Act; (4) Plaintiffs' claims are narrowed by contract and New York's choice-of-law rules; (5) Plaintiff Sale fails to state a claim under the New York GBL; (6) Plaintiffs fail to state claims under the CIPA and UCL; and (7) Plaintiffs fail to state common-law claims for intrusion upon seclusion, fraud, and unjust enrichment. The Court takes each argument in turn.

### A. Standing

"[S]tanding is a threshold matter of justiciability." *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022). Thus, the Court begins with standing "to ensure that [the Court] possesses jurisdiction" over Plaintiffs' claims. *Grinblat v. Frontline Asset Strategies, LLC*, No. 22-CV-4467, 2023 WL 5002474, at *2 (S.D.N.Y. Aug. 4, 2023). Because "standing is not dispensed in gross," *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433,

439 (2017) (quotation marks omitted), the Court must satisfy itself that Plaintiffs have standing for "each claim [they] seek[] to press," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).[2]

Broadly, BBC contends that Plaintiffs fail to establish standing for their claims because their privacy-related claims fail to allege harm sufficiently analogous to the traditionally recognized harms of intrusion upon seclusion and public disclosure of private facts, and their claims sounding in unjust enrichment and fraudulent misrepresentation fail to allege monetary injury. (*See* Mem. at 25-30.)

### 1. Public Disclosure of Private Facts

BBC correctly observes that "[c]ourts assess Article III standing" for privacy-related injuries "through the common law torts of 'intrusion upon seclusion' and 'public disclosure of private facts.'" (Mem. at 25.) But BBC is mistaken that Plaintiffs fail to allege injuries sufficiently analogous to those traditionally recognized comparators. (*See id.*)

Starting with public disclosure of private facts, the Second Circuit had "no trouble" holding in *Salazar v. National Basketball Ass'n* that the plaintiff had Article III standing because his claim that "his personally identifiable information was exposed to an unauthorized third party" was "closely related to the public disclosure of private facts analog." 118 F.4th 533, 542 (2d Cir. 2024), *cert. denied*, 146 S. Ct. 880 (2025) (cleaned up). As relevant here, the disclosures in *Salazar* transmitted "(1) the title of the . . . video a user watched, (2) that video's

[2] BBC does not challenge Plaintiffs' standing to raise their VPPA claim. (Reply at 11 n.5.) Nevertheless, "standing is a threshold matter of justiciability," so "the Court addresses [Plaintiffs'] standing [for their VPPA claim] *sua sponte*." *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022).

URL, and (3) the user's 'Facebook ID' . . . a number unique to each individual Facebook account." *Id.* at 537-38.

Similarly, in this case, Plaintiffs allege that BBC transmitted to third-party Tracking Entities "detailed interaction and behavioral data, including links, buttons, forms, and other on-page elements selected by visitors," in addition to "personal, device, and technical identifiers, such as . . . persistent visitor identifiers that enable recognition across sessions and websites" and "visitors' email addresses." (AC ¶ 6.) Plaintiffs further allege that BBC's tracking "is performed pursuant to commercial agreements between [BBC] and the Tracking Entities." (*Id.* ¶ 107.) In light of these allegations' parallelism with the allegations in *Salazar*, this Court has "no trouble" concluding that Plaintiffs' alleged privacy harms are sufficiently concrete because they bear a close "relationship to a well-established common-law analog: public disclosure of private facts." *Salazar*, 118 F.4th at 541-42 (quoting *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 285 (2d Cir. 2023)).

The cases invoked by BBC are inapposite. BBC relies heavily on cases within the Ninth Circuit that sit in some tension with *Salazar*. (*See* Mem. at 25-29.) To the extent that the Ninth Circuit's standing analysis differs from the Second Circuit's, "this Court is of course not bound to reject the Second Circuit's well-considered precedents in favor of another circuit's." *Lazaar v. Anthem Companies, Inc.*, 678 F. Supp. 3d 434, 440 (S.D.N.Y. 2023) (cleaned up).

BBC's cases from within the Second Circuit fare no better. In *Gabrielli v. Insider, Inc.*, the court determined that "the disclosure of an IP address does not bear a sufficiently close relationship" to public disclosure of private facts. No. 24-CV-1566, 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025). *Gabrielli* distinguished *Salazar* on the basis that *Salazar* involved the disclosure of "information to a third-party which allowed the third-party to specifically identify

[the plaintiff] by reference to his Facebook ID." *Id.* at *5. "Gabrielli's IP address, by contrast, cannot personally identify him, nor does the Tracker disclose the content Gabrielli accessed in the Website." *Id.* The same was true in *Xu v. Reuters News & Media Inc.*, where the court dismissed for lack of standing because "the Complaint [did] not plausibly allege that Reuters collected anything other than the IP address of Xu's device." No. 24-CV-2466, 2025 WL 488501, at *5 (S.D.N.Y. Feb. 13, 2025). And in *In re: Zeta Global Data Privacy Litigation*, the court concluded that standing was not satisfied because the complaint failed to "allege any [personally identifiable information] that was disclosed." No. 25-CV-5780, 2026 WL 2254612, at *6 (S.D.N.Y. Aug. 5, 2026).

To state the obvious, *Gabrielli*, *Xu*, and *Zeta* did not—and could not—cast doubt on the vitality of the Second Circuit's holding in *Salazar*. While these cases may stand for the proposition that "the disclosure of email addresses or IP addresses" do not "present[] a cognizable injury," *Zeta*, 2026 WL 2254612, at *7, the Amended Complaint plainly alleges more—namely, disclosure of the content consumed by users *and* personally identifiable information such as their email addresses. (*See* AC ¶¶ 6, 77, 83-87.) Under *Salazar*, Plaintiffs' alleged privacy harms bear a sufficiently "close relationship" with the traditionally recognized harm of public disclosure of private facts, such that Plaintiffs' allegations of such harms constitute concrete injuries-in-fact under Article III.

Accordingly, Plaintiffs' claims alleging harm in the form of unauthorized disclosure of personally identifiable information to a third party satisfy Article III's injury-in-fact requirement. BBC's motion is therefore denied insofar as it moves to dismiss Plaintiffs' claims under the

Wiretap Act, VPPA, CIPA, UCL, and GBL § 349, as well as Plaintiffs' common-law claim for intrusion upon seclusion.[3]

**2. Intrusion Upon Seclusion**

Separately, Plaintiffs' alleged privacy harms are also concrete due to their close relationship to the traditionally recognized harm of intrusion upon seclusion.

In *Mount v. PulsePoint, Inc.*, the Second Circuit established that "unauthorized accessing and monitoring of plaintiffs' web-browsing activity implicates harms similar to those associated with the common law tort of intrusion upon seclusion so as to satisfy the requirement of concreteness." 684 F. App'x 32, 34 (2d Cir. 2017) (summary order). Indeed, this Court has cited *Mount* for the proposition that "a plaintiff could sue a company that used 'cookies' to monitor and sell internet-browsing data even though the data was anonymized." *Cooper v. Slice Techs., Inc.*, No. 17-CV-7102, 2018 WL 2727888, at *3 (S.D.N.Y. June 6, 2018).

BBC contends that the Amended Complaint is distinguishable from *Mount* and the traditional harm of intrusion upon seclusion because "plaintiffs consented to the defendant's privacy policy." (Reply at 12.) But the Amended Complaint repeatedly alleges that the sharing of Plaintiffs' data occurred without their consent (*see* AC ¶¶ 9, 27, 47, 73, 80, 122, 126-131), and

[3] To be sure, the UCL and GBL § 349 facially resemble common-law fraudulent misrepresentation. *See* Cal. Bus. & Prof. Code § 17200 (prohibiting any "fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising"); N.Y. Gen. Bus. Law § 349 (prohibiting "[u]nfair, deceptive, or abusive acts or practices"). But "the type of harm that a statute protects against is of little (or no) import; what matters is whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 n.2 (2d Cir. 2021) (cleaned up). Because Plaintiffs allege injury by way of unauthorized disclosures to buoy their claims under the UCL and GBL § 349 (*see* AC ¶¶ 248-249, 261), these claims—like Plaintiffs' other privacy-related claims—sufficiently allege concrete injury-in-fact. *Accord In re Tiktok, Inc., Minor Privacy Litig.*, No. MDL-3144, 2025 WL 3628598, at *11 (C.D. Cal. Nov. 5, 2025) (finding standing for UCL claim through "intangible privacy injuries").

Plaintiffs dispute that any consent to BBC's privacy policy contemplated the collection and distribution of their sensitive information at issue here (*see* Opp. at 35-36). Thus, BBC's argument, contingent on a factual premise that Plaintiffs contest, "puts the cart before the horse," as the disputed validity of the parties' consent "is a merits issue, not a standing issue." *Cooper*, 2018 WL 2727888, at *3.

"For standing, the question is whether the harm alleged—nonconsensual [distribution of plaintiffs' personally identifiable information]—is concrete enough." *Id.* At this juncture, and guided by *Mount*, the Court concludes that Plaintiffs' alleged privacy harms are sufficiently concrete given their parallels with the traditional harm of intrusion upon seclusion.

**3. Unjust Enrichment and Fraudulent Misrepresentation**

Finally, BBC contends that Plaintiffs lack standing for their claims sounding in unjust enrichment and fraudulent misrepresentation because those claims require an allegation of monetary injury to Plaintiffs. (Mem. at 29-30.) BBC is half-wrong, half-right.

Unjust enrichment has historically required a showing that the defendant was "unjustly enriched at the expense of another." Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011). But "the consecrated formula 'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." *Id.*; *see also Gabrielli*, 2025 WL 522515, at *7 (same); *Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, No. 16-CV-28, 2019 WL 5081061, at *2 (D. Vt. Oct. 10, 2019) ("An unjust enrichment claim does not require proof of a monetary loss suffered by Plaintiff."); *Spokeo*, 578 U.S. at 344 (Thomas, J., concurring) ("Many traditional remedies for private-rights causes of action—such as . . . unjust enrichment—are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right.").

Here, the Amended Complaint alleges that BBC "obtained a benefit by collecting, processing, and enabling Tracking Entities' monetization of Plaintiffs' and Class Members' Sensitive Information, which [BBC] then used to increase the effectiveness of advertising, marketing, and sales and to generate revenue," and that BBC "retained those benefits under circumstances in which the information was collected and transmitted without valid consent." (AC ¶¶ 294-295.) Thus, Plaintiffs sufficiently allege that BBC's tracking and transmitting was "in violation of [their] legally protected [privacy] rights," such that BBC was "unjustly enriched at the expense of [Plaintiffs]." Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011). The Court rejects BBC's standing challenge as to Plaintiffs' common-law claim for unjust enrichment and Plaintiffs' claim under GBL § 350.[4]

But Plaintiffs' common-law claim for fraudulent misrepresentation stands on different footing, as it requires actual pecuniary loss to satisfy Article III injury-in-fact. "The common law of deceit subjects a person who 'fraudulently' makes a 'misrepresentation' to liability 'for pecuniary loss caused' to one who justifiably relies upon that misrepresentation." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343 (2005) (quoting Restatement (Second) of Torts § 525 (1976)); *see also Citicorp Int'l Trading Co. v. W. Oil & Refin. Co.*, 790 F. Supp. 428, 436 (S.D.N.Y. 1992) ("Actual pecuniary loss is the sole compensable form of damages in a fraud action.").

The Amended Complaint fails to sufficiently allege pecuniary loss. In arguing to the contrary, Plaintiffs point to their allegation that "Plaintiffs suffered diminution in the value of their personal data and loss of control over their personal information." (Opp. at 18 (quotation

[4] Plaintiff Sale's GBL § 350 claim is sufficiently analogous to the traditional formulation of unjust enrichment because it alleges that BBC "obtained a benefit from Plaintiff . . . by collecting, using, and disclosing [his] Sensitive Information through Tracking Entities" and "caused Plaintiff . . . to suffer actual damages . . . by subjecting [him] to unauthorized tracking and data sharing." (AC ¶¶ 272-273.)

marks omitted).) But this theory of pecuniary injury is speculative, as the Amended Complaint "does not allege that the value—in plaintiffs' hands or [BBC's]—has diminished in value following [BBC's] alleged acquisition and use of it." *Zeta*, 2026 WL 2254612, at *9. Plaintiffs do not allege the existence of "some market in which [P]laintiffs' data might be salable," that "[BBC's] actions have saturated the market with this data that it might have lost value," or that "[P]laintiffs ever intended to sell their personal information for value." *Id.* (quotation marks omitted). Absent such allegations, Plaintiffs' theory of injury by way of diminution of value "is conclusory, and does not demonstrate injury-in-fact." *Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472, 2019 WL 2023713, at *8 (S.D.N.Y. May 7, 2019).

The failure to allege pecuniary loss is fatal to Plaintiffs' common-law claim for fraud, deceit, or misrepresentation. Accordingly, the Court grants BBC's motion to dismiss Plaintiffs' common-law fraud claim for lack of standing,[5] and denies BBC's motion to dismiss on standing grounds for the remainder of Plaintiffs' claims.

**B. The VPPA**

The Court now turns to BBC's challenges to the merits of the Amended Complaint. To start, Plaintiffs allege that BBC's unauthorized collection and disclosure of their data violated the VPPA. The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing]" certain "personally identifiable information" ("PII") of a qualified "consumer" without consent. 18 U.S.C. § 2710(b)(1).

---

[5] In addition to requiring dismissal as a matter of Article III standing, Plaintiffs' failure to allege pecuniary loss requires dismissal of their common-law fraud claim under Rule 12(b)(6) and Rule 9(b) because the Amended Complaint does not allege with particularity that BBC's alleged fraud caused "[a]ctual pecuniary loss." *Citicorp*, 790 F. Supp. at 436; *see also Zeta*, 2026 WL 2254612, at *9.

BBC challenges Plaintiffs' VPPA claim by arguing that (1) Plaintiffs Ramabadran, Belozerov, and Sale are not alleged to be "consumers" under the VPPA; (2) Plaintiffs fail to allege a single disclosure that would allow an ordinary person to decipher their personally identifiable information ("PII"); and (3) disclosures pertaining to a given consumer's PII are visible only to the consumer. (*See* Mem. at 22-25.) None of these arguments warrant dismissal.

**1. Consumer Status Under the VPPA**

First, BBC contends that "only Chisholm and Ramirez are alleged to be 'consumers' eligible to assert VPPA claims." (Mem. at 22.) BBC complains that the other Plaintiffs, Ramabadran, Belozerov, and Sale, "do not assert that they are 'consumers' under the VPPA." (*Id.* at 22 n.5.) In essence, BBC complains of a pleading deficiency—the Amended Complaint explicitly alleges consumer status for Chisholm and Ramirez, but not for the other Plaintiffs.

This pleading differential does not warrant dismissal. A person who gives personal information—such as their email address, IP address, and cookies—to a website in exchange for an online newsletter is a "consumer" under the VPPA. *See Salazar*, 118 F.4th at 546-53. BBC does not contend that Ramabadran, Belozerov, and Sale fail to meet that standard, but curiously argues that dismissal is warranted because the Amended Complaint does not attach the label "consumer" to those Plaintiffs' names. First, BBC is wrong on the facts. The Amended Complaint alleges that *all* "Plaintiffs . . . are 'consumers' because they subscribe to [BBC's] Website." (AC ¶ 199.) BBC also falters on the law. The question is whether Plaintiffs "allege[d] enough facts to state a claim to relief," not whether Plaintiffs parroted "a formulaic recitation of the elements of a cause of action." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022) (quotation marks omitted). The Court declines BBC's invitation to reduce Rule 12(b)(6) to an exercise in element identification.

### 2. Disclosure of Personally Identifiable Information

Next, BBC contends that Plaintiffs' VPPA claim fails because the Amended Complaint does not "plausibly allege the disclosure of PII." (Mem. at 22.) The Court disagrees.

BBC argues that the Amended Complaint's screenshots depict two distinct transmissions: (1) a "request" containing the URL of the material consumed by the user, the video title, and alphanumeric strings including a "user_token," and (2) a "response" containing the user's email address. (*Id.*) As a result, says BBC, the Amended Complaint fails because neither transmission, standing alone, "contains information sufficient for an ordinary person to identify a particular person's video-watching habits" (*id.* (quotation marks omitted)), and "VPPA liability requires one disclosure from which an ordinary person can identify *both* person and video title, not separate disclosures pieced together" (Reply at 9).

At the outset, the Court is unconvinced that the VPPA imposes the single-disclosure requirement that BBC advances. The sole case on which BBC relies imposes no such requirement. *See generally Hughes v. Nat'l Football League* No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025) (summary order), *cert. denied*, 146 S. Ct. 1790 (2026). Indeed, *Hughes*, a summary order, merely observed that, in *that particular case*, the complaint alleged impermissible disclosure in a "single communication session." *Id.* at *2. Nowhere did *Hughes* imply that the absence of such an allegation would have been fatal to the VPPA claim.

In any event, the Amended Complaint sufficiently alleges a "single communication session." *Id.* The Amended Complaint specifically alleges that "the request and response are logged under the same entry in the dev tools," such that "[a]n ordinary visitor can view" all of the information contained in both the request and response "simply by accessing the Payload, Preview and Response tabs in their browser's dev tools." (AC ¶¶ 87-88.) Thus, even if BBC persuaded the Court that the VPPA operates only on single, consolidated disclosures, the Court

would conclude that the Amended Complaint satisfies that requirement. To the extent that BBC disputes that the "request" and "response" are, in fact, disclosed as a single package, BBC raises a factual dispute that this Court "cannot resolve . . . on a motion to dismiss." *Kiseleva v. Greenspan*, 755 F. Supp. 3d 367, 381 (S.D.N.Y. 2024).

Next, BBC contends that the information disclosed in the "request" and "response" would not allow an ordinary person to discern the identity of a given consumer. (*See* Mem. at 22-24.) BBC is correct that indecipherable alphanumeric strings, such as the sequences labeled "user_token" and "user_id" (*see* AC ¶¶ 82-86), do not constitute PII because their disclosure would not "allow an ordinary person to identify [the] consumer's video-watching habits" without the equipment of "a sophisticated technology company," *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 52 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 885 (2025).

However, the Amended Complaint alleges not only the disclosure of alphanumeric strings, but also "unencrypted email addresses." (AC ¶ 87.) BBC claims that this, too, is insufficient because a user may not be personally identifiable through their email address. (Mem. at 23.) But courts have generally concluded that "email addresses are personally identifying." *Aldana v. GameStop, Inc.*, No. 22-CV-7063, 2024 WL 708589, at *7 n.5 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, No. 22-CV-7063, 2024 WL 3104345 (S.D.N.Y. June 24, 2024) (collecting cases); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) ("A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual."); *United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of 'information that identifies an individual.'").

In sum, the Amended Complaint alleges that BBC sends to the Tracking Entities a single disclosure that transmits, *inter alia*, "the visitor's plain-text email address," as well as the "URL, title, [and] description" of the videos or other media that the visitor consumes. (AC ¶ 87.) Together, this information "plausibly allege[s] that [Plaintiffs] gave [BBC] valuable personal information in exchange for access to the online newsletter," among the other materials offered on BBC's Website. *Salazar*, 118 F.4th at 552. The Amended Complaint thus sufficiently alleges the unauthorized disclosure of PII.

**3. Disclosure of Other Users' Personally Identifiable Information**

Finally, BBC argues that the Amended Complaint fails because the alleged disclosure reveals only the user's own activity; that is, a given user cannot view the PII and behavioral information of *other users*. (Mem. at 24.) Because VPPA liability does not attach when a video tape service provider "disclose[s] personally identifiable information" of the consumer to the same consumer, *see* 18 U.S.C. § 2710(b)(2)(A), BBC contends that Plaintiffs' VPPA claim fails.

At this juncture, BBC's challenge lacks force. The Amended Complaint alleges that BBC's unauthorized disclosures "allow[] an ordinary viewer to view *every request* a website is sending to and from other servers." (AC ¶ 80 (emphasis added).) Accordingly, whether a consumer can access the PII of another consumer constitutes another factual dispute that the Court cannot adjudicate on a motion to dismiss. *See Kiseleva*, 755 F. Supp. 3d at 381.

Having rejected each discrete challenge to Plaintiffs' VPPA claim, the Court denies BBC's motion to dismiss insofar as it seeks dismissal of that claim.

**C. The Wiretap Act**

BBC next takes aim at Plaintiffs' claim under the Wiretap Act, which generally prohibits "intentionally intercept[ing] . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). But the Wiretap Act does *not* prohibit interception of a communication "where

[the interceptor] is a party to the communication . . . *unless* such communication is intercepted for the purpose of committing any criminal or tortious act." *Id.* § 2511(2)(d) (emphasis added). In sum, the Wiretap Act carves out liability where the interceptor is a party to the communication (the "party-exception"), but the party-exception is inapplicable where the communication was intercepted for a criminal or tortious purposes (the "crime-tort exception"). *Id.*

Neither party disputes that (1) the Wiretap Act's general prohibition applies because BBC intentionally intercepted Plaintiffs' communications with the Website through BBC's use of the Tracking Tools, and (2) the party-exception applies because BBC owns the Website and was therefore a party to Plaintiffs' communications. (*See* Mem. at 30-31; Opp. at 22-23; Reply at 12-13.) The issue boils down to whether BBC intercepted Plaintiffs' communications for a criminal or tortious purpose, such that the crime-tort exception applies.

The Court concludes that the crime-tort exception does not apply. The crime-tort exception should be "construed narrowly" and is "confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party." *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013). The Amended Complaint alleges no such vitriol. (*See, e.g.*, AC ¶¶ 125, 184 (alleging interception "for advertising, analytics, and marketing purposes" and "optimization").)

Still, some courts have concluded that the crime-tort exception applies where the party-interceptor intended to use the captured communication for a subsequent unauthorized disclosure in violation of the VPPA. *See, e.g.*, *Cheung v. Slickdeals, LLC*, No. 26-CV-519, 2026 WL 1872831, at *14 (C.D. Cal. June 29, 2026). And here, Plaintiffs claim that the crime-tort exception applies because BBC engaged in "the unlawful interception of Plaintiffs' electronic

communications for the secondary tortious purpose of disclosing their PII in violation of the VPPA." (Opp. at 23.)

Critically, however, the crime-tort exception applies only where "the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). Put differently, the tort cannot "occur[] through the act of interception itself." *Id.* at 101. Here, the Amended Complaint temporally intertwines the alleged interception under the Wiretap Act and the alleged disclosure under the VPPA: "Plaintiffs' electronic communications with the Website were intercepted *at the moment they were sent and transmitted to Tracking Entities* without Plaintiffs' consent." (AC ¶ 184 (emphasis added); *see also id.* ¶ 203 (alleged disclosure in violation of VPPA "is triggered automatically through Defendant's use of the Piano Analytics").) Because, as alleged, Plaintiffs' VPPA violations were "complete when the interception[s] occur[red]," they are "are insufficiently independent of the Wiretap Act violation" to warrant application of the crime-tort exception. *Joiner v. NHL Enterprises, Inc.*, No. 23-CV-2083, 2025 WL 2846431, at *8 (S.D.N.Y. Aug. 29, 2025) (quotation marks omitted), *report and recommendation adopted in part*, No. 23-CV-2083, 2025 WL 3126106 (S.D.N.Y. Sep. 29, 2025) (adopting recommendation in full on Wiretap Act claim). As a result, Plaintiffs' Wiretap Act claim founders, and the Court grants BBC's motion to dismiss with respect to that claim.

**D. Choice of Law**

Moving to Plaintiffs' state-law claims, BBC argues that choice of law principles mandate dismissal of several of Plaintiffs' claims because they are not cognizable under New York law. Specifically, BBC contends that (1) an actual conflict exists between New York law and the laws of Plaintiffs' home states with respect to Plaintiffs' CIPA, UCL, and intrusion-upon-seclusion claims; (2) Plaintiffs Chisholm, Ramirez, and Sale assented to the Terms of Use, which has a

choice-of-law provision selecting New York law; and (3) alternatively, New York's choice-of-law rules would apply New York law. (*See* Mem. at 31-34, 41-42.)

As an initial matter, the Court recognizes that "court often decline to make a choice of law determination at the motion to dismiss stage" because such analyses are "fact intensive." *Smith v. Railworks Corp.*, No. 10-CV-3980, 2011 WL 2016293, at * 6 n.12 (S.D.N.Y. May 17, 2011). Nevertheless, as this Court has explained, where "the relevant facts are sufficiently clear, courts in this Circuit have engaged in choice-of-law analysis at the motion to dismiss stage." *Patel v. N.Y. Life Ins. Co.*, No. 11-CV-4895, 2012 WL 1883529, at *3 (S.D.N.Y. May 21, 2012). The Court concludes that the "relevant facts are sufficiently clear" insofar as they are laid out in the Amended Complaint, so the Court proceeds to the merits of the choice-of-law analysis. *Id.*

**1. Actual Conflict**

"A federal court . . . adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989); *see also Anglo-German Progressive Fund, Ltd. v. Concorde Grp., Inc.*, No. 09-CV-8708, 2010 WL 3911490, at *11 (S.D.N.Y. Sep. 14, 2010) ("A federal court exercising supplemental jurisdiction applies the choice of law rules of the forum state."). Under New York law, "the first step in any choice of law inquiry is to determine whether there is an actual conflict between the rules of the relevant jurisdictions." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (quotation marks omitted).

Here, BBC and Plaintiffs both argue that there is a direct conflict between New York and California law with respect to Plaintiffs' claims for unauthorized wiretapping[6] and unauthorized

[6] CIPA § 631(a) prohibits "read[ing] . . . any . . . communication while the same is in transit or passing over any wire, line or cable" in an "unauthorized manner." Cal. Penal Code § 631(a).

installation of pen registers[7] under the CIPA. (*See* Mem. at 33; Opp. at 26.) The Court agrees. California affords a private right of action for unauthorized wiretapping and pen register installation. Cal. Penal Code § 637.2 ("Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation."). New York does not. *See Joiner*, 2025 WL 2846431, at *10 ("[T]he New York [wiretapping] statute does not provide for a private right of action." (collecting cases)); N.Y. Crim. Proc. Law § 705.05 (affording no private right of action).[8] There is therefore a conflict between the viability of Plaintiffs' CIPA claims under New York and California law.

BBC is also correct that an actual conflict exists between the law of New York on one hand and the laws of California and Alaska on the other as to Plaintiffs' intrusion-upon-seclusion claim. (*See* Mem. at 41-42.) Alaska and California[9] entertain causes of action for intrusion upon seclusion. *See, e.g.*, *Greywolf v. Carroll*, 151 P.3d 1234, 1245 (Alaska 2007); *Taus v. Loftus*, 40 Cal. 4th 683, 725, 730 (2007). But "New York does not recognize the tort of intrusion upon

---

[7] CIPA § 638.51(a) prohibits "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a).

[8] BBC cites *Boucher v. Dilorenzo*, No. 84-CV-7868, 1986 WL 2409, at *4 (S.D.N.Y. Feb. 19, 1986), for the proposition that New York law affords no private right of action under its pen register statute. (*See* Mem. at 33.) But *Boucher* dealt with Penal Law § 250.05, which prohibits "eavesdropping," or "unlawfully engag[ing] in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing [] an electronic communication," not unauthorized pen register installation. N.Y. Penal Law § 250.05; *see Boucher*, 1986 WL 2409, at *4. Nevertheless, the Court concludes that New York affords no private right of action for "the [unauthorized] use of a pen register or a trap and trace device," N.Y. Crim. Proc. Law § 705.05, as § 705.05 provides "no implication of an intent to confer rights on a particular class of persons," *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quotation marks omitted).

[9] Like New York, "Massachusetts does not recognize a common-law cause of action for invasion of privacy." *Cloutier v. City of Lowell*, No. 15-CV-12780, 2015 WL 8751334, at *9 (D. Mass. Dec. 14, 2015). Thus, no conflict exists as to Plaintiff Belozerov's intrusion-upon-seclusion claim, and the Court applies the law common to New York and Massachusetts to that claim.

seclusion." *Joiner*, 2025 WL 2846431, at *10 (quotation marks omitted); *accord Poppel v. Est. of Archibald*, No. 19-CV-1403, 2020 WL 2749719, at *9 (S.D.N.Y. May 27, 2020).

Finally, BBC argues that Plaintiffs' California UCL claim[10] should be dismissed because it "overlap[s]" in substance with Plaintiffs' New York GBL claim. (Mem. at 34.) The Court concludes that there is no actual conflict between the substantive requirements of the UCL and the GBL. Both statutes "make it unlawful for a business to engage in deceptive conduct," and, consequently, require a plaintiff to "assert sufficient factual allegations to suggest that defendant is engaging in an act or practice that is deceptive or misleading in a material way" to survive a motion to dismiss. *Garadi v. Mars Wrigley Confectionery US, LLC*, No. 19-CV-3209, 2021 WL 2843137, at *2 (E.D.N.Y. July 6, 2021) (quotation marks omitted). The harmony between the UCL and GBL does not warrant dismissal of Plaintiffs' UCL claims. Rather, in the absence of an actual conflict, the Court simply "appl[ies] both states' law." *In re Residential Capital, LLC*, No. 25-118, 2026 WL 278142, at *2 n.5 (2d Cir. Feb. 3, 2026) (summary order); *see also Garardi*, 2021 WL 2843137, at *2-3 (analyzing UCL and GBL claims in tandem).

**2. Choice-of-Law Provision**

Next, BBC contends that Chisholm, Ramirez, and Sale—who hail from Alaska, California, and New York, respectively—assented to BBC's Terms of Use and Subscription Terms (the "Terms"),[11] such that their tort claims must be resolved under New York law under the Terms' choice-of-law provisions. (Mem. at 31.) Not so.

[10] Confusingly, Plaintiffs state that they "agree that an actual conflict exists as to the . . . UCL claims" (Opp. at 26), before arguing that "there is no conflict" "[b]ecause no single Plaintiff brings claims under both the UCL and GBL" (*id.* at 26 n.4). The Court will credit Plaintiffs' disavowal of conceding that an actual conflict exists as to Plaintiffs' UCL claims.

[11] In the Surreply, Plaintiffs take issue with BBC's submission of additional exhibits on the question of whether Plaintiffs assented to the Terms in its Reply, particularly because Plaintiffs contest the accuracy of those exhibits. (*See generally* ECF No. 44-1.) Because BBC's

Critically, the Terms' choice-of-law provisions cabin their applicability to claims *arising from* the Terms. (*See* ECF No. 25-2 § 22(b) ("[T]hese Terms are governed by the laws of . . . the State of New York."); ECF No. 25-5 § 11 ("These Subscription Terms will be governed by and construed in accordance with the laws of . . . New York.").) That is, the Terms do not establish that *any dispute* between BBC and its users will be governed by New York law—just claims arising under the Terms themselves. This distinguishes the Terms' choice-of-law provisions from those courts have found to govern the disputes at hand. *See, e.g.*, *Henry v. Major League Baseball Advanced Media, L.P.*, No. 24-CV-1446, 2025 WL 3717068, at *7 (S.D.N.Y. Dec. 23, 2025) (applying choice-of-law provision to privacy tort claims where provision "select[ed] New York law to govern [all] disputes between Defendant and its subscribers"), *report and recommendation adopted*, No. 24-CV-1446, 2026 WL 45345 (S.D.N.Y. Jan. 7, 2026). Limited, contractual choice-of-law provisions like the ones in the Terms here apply only to "a cause of action sounding in contract, not one sounding in tort." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540 (2d Cir. 1997); *see also Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (holding similar choice-of-law provision insufficient "to encompass the entire relationship between the contracting parties," including "claims for tort"). Plaintiffs' CIPA and intrusion-upon-seclusion claims are tortious, not contractual, in nature and are therefore beyond the scope of the choice-of-law provisions in BBC's Terms.

Reply introduces new exhibits to which Plaintiffs had no prior opportunity to respond, the Court grants Plaintiffs' letter motion for leave to file its Surreply. (*See* ECF No. 44.) Nevertheless, the Surreply makes no difference to the Court's analysis, as the Court rules in favor of Plaintiffs on the merits of every issue related to the Terms. Specifically, the Court rejects the applicability of the Terms' choice-of-law provisions, rejects the waiver of Plaintiffs' privacy-related claims, and defers decision on the viability of the class action waiver in the Subscription Terms. *See infra* Sections III(D)(2), III(E). Accordingly, Plaintiffs incur no prejudice by the Court's assuming without deciding that Plaintiffs assented to the Terms.

BBC tries a couple of legal sleights of hand in hopes of escaping this result, but to no avail. First, BBC contends that the Terms reach "any claim or dispute with BBC.com relating in any way to . . . use of the Services." (Reply at 14 (quoting ECF No. 25-2 § 22(b)).) In so arguing, BBC conflates the limited scope of the Terms' choice-of-law provisions and the broader reach of the Terms' forum-selection clause. The first sentence of § 22(b) establishes that New York law governs any disputes with BBC as to "these Terms." (ECF No. 25-2 § 22(b).) In contrast, the second sentence of that provision establishes that the jurisdiction for "any claim or dispute with BBC.com relating in any way to . . . use of the Services" is proper in the courts of New York. (*Id.*) If anything, the Terms' explicit reference to "any claim or dispute with BBC.com" in its forum-selection clause makes clear that the scope of the choice-of-law provision is more limited—and does not extend to Plaintiffs' CIPA and intrusion-upon-seclusion claims here. *See Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) ("Under New York law, then, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause."); *see also U.S. Bank v. ILDA, LLC*, No. 13-CV-3082, 2014 WL 4290543, at *3 (S.D.N.Y. Aug. 29, 2014) ("When a contract includes a phrase in one provision but not in another parallel provision, the court presumes that the drafters acted intentionally and intended a difference in meaning.").

BBC also argues that the Terms' choice-of-law provisions should govern because the Amended Complaint alleges misrepresentation in BBC's Privacy Policy, which the Terms incorporate by reference. (Reply at 14.) But the allegation in the Amended Complaint that BBC invokes pertains to Plaintiffs' Wiretap Act claim, a federal cause of action not subject to BBC's choice-of-law challenge, rather than Plaintiffs' common-law claim for intrusion upon seclusion

or their claims under the CIPA. (*See id.* (citing AC ¶ 180).) New York's choice-of-law rules operate "on a claim-by-claim basis." *Utts v. Bristol-Myers Squibb Co.*, 226 F. Supp. 3d 166, 176 (S.D.N.Y. 2016); *see also Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012) ("We conduct the choice-of-law analysis separately for each of the Plaintiffs' claims."). Thus, because the Amended Complaint's invocation of alleged misrepresentations in BBC's Privacy Policy does not implicate Plaintiffs' CIPA and intrusion-upon-seclusion claims, those allegations do not trigger the Terms' choice-of-law provisions. Ultimately, then, the choice-of-law provisions do not supply the governing law for Plaintiffs' CIPA and intrusion-upon-seclusion claims.

**3. Choice-of-Law Analysis**

Because Plaintiffs' CIPA and intrusion-upon-seclusion claims fall outside of the scope of the relevant choice-of-law provisions, the Court applies New York's choice-of-law analysis. *See Fin. One Pub.*, 414 F.3d at 336-37. For tort claims, New York employs an "interest analysis," in which "the law of the jurisdiction having the greatest interest in the litigation will be applied and the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006) (cleaned up).

The interest-analysis bisects the universe of tort rules into two categories: "conduct-regulating" rules and "loss-allocating" rules. *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 200 (1985). The parties correctly characterize the privacy rules underlying Plaintiffs' CIPA and intrusion-upon-seclusion claims as conduct-regulating. (*See* Mem. at 33; Opp. at 27.) Because "conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993).

Plaintiffs and BBC contest the loci of the relevant privacy torts. Plaintiffs contend that those torts occurred in Plaintiffs' home states, as "the last act necessary for liability . . . [was] BBC's delivery of the Tracking Tools to Plaintiffs' devices located within Plaintiffs' respective domiciles." (Opp. at 28.) Conversely, BBC argues that the alleged CIPA and intrusion-upon-seclusion claims should be localized to New York because BBC's allegedly wrongful conduct occurred in New York. (Mem. at 33-34; Reply at 15-16.)

BBC gets the better of this dispute. In *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, the Second Circuit encountered a similar situation in which there was "a conflict between the conduct-regulating rules of the place where the injury occurred and the conduct-regulating rules of the place where the conduct of the defendant in question occurred." 739 F.3d 45, 50 (2d Cir. 2013) (per curiam). The Second Circuit concluded that, under New York law, "it is the place of the allegedly wrongful conduct that generally has superior interests in protecting the reasonable expectations of the parties who relied on the laws of that place to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future." *Id.* at 50-51 (cleaned up); *see also Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 399 (S.D.N.Y. 2018) (Nathan, J.) ("[T]he state with the greatest interest in this case is the state in which the alleged wrongful conduct occurred.").

The same logic applies here. The "conduct" that the relevant rules purport to "regulate" is BBC's implementation of the tracking tools on its Website. *Joiner*, 2025 WL 2846431, at * 11 ("Their allegedly tortious conduct—that is, the conduct that the relevant state laws seek to regulate—was the placement of the Pixel on the NHL Website and the Team Websites."). (*See also* AC ¶ 26.) The Amended Complaint alleges that BBC's domestic decision-making "emanate[s] from its New York, New York office." (*Id.* ¶ 263). Accordingly, the Court

concludes that BBC's alleged misconduct occurred in New York, such that New York's conduct-regulating rules govern Plaintiffs' CIPA and intrusion-upon-seclusion claims.

To be sure, Plaintiffs resist this conclusion. First, Plaintiffs contest that BBC's relevant conduct occurred in New York because "BBC has offered no evidence that it made the decisions to place the Tracking Tools and to implement the Privacy Settings in New York rather than at its UK headquarters." (Opp. at 27.) But the Amended Complaint makes no mention of BBC's UK headquarters, and the Court declines to consider factual allegations first raised in the parties' briefs. *See Ujka v. Mayorkas*, No. 24-CV-4801, 2025 WL 2419545, at *6 n.9 (S.D.N.Y. Aug. 21, 2025) ("The Court declines to take these assertions into account because new facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered in deciding a motion to dismiss." (cleaned up)). Plaintiffs also dispute that "BBC's tortious conduct occurred in New York, as delivery of Tracking Tools to Plaintiffs and subsequent intrusions and interceptions occurred in other states." (Opp. at 29.) This argument lacks merit, as it merely repackages Plaintiffs' flawed argument that the law of the place of injury governs.

Finally, Plaintiffs contend that application of New York law would "thwart the policy of California's privacy-focused conduct-regulating rules." (Opp. at 29.) While the Court appreciates that California expressed its interest in "protect[ing] the right of privacy" of Californians, *see* Cal. Penal Code § 630, New York has a strong interest in "protecting the reasonable expectations of the parties who relied on the laws" of New York, such as BBC, in "govern[ing] their primary conduct." *Licci*, 739 F.3d at 50 (quotation marks omitted). In the face of these sparring interests, the Court abides by the guidance provided by *Licci* and applies the law of the state in which the allegedly offending conduct transpired: New York. *Id.* at 50-51.

Because the Court concludes that New York has a superior interest in the application of its conduct-regulating rules regarding Plaintiffs' CIPA and intrusion-upon-seclusion claims, the Court grants BBC's motion to dismiss with respect to those claims.

**E. Privacy Policy Waivers**

BBC argues Plaintiffs Chisholm, Ramirez, and Sale consented to the disclosures at issue by assenting to the terms of the Privacy Policy, such that their privacy-related claims under the VPPA, Wiretap Act, CIPA, and for intrusion upon seclusion fail. (Mem. at 31-32.) Having dismissed Plaintiffs' common-law claim for intrusion upon seclusion and Plaintiffs' statutory claims under the Wiretap Act and the CIPA, this argument bears relevance only to these Plaintiffs' VPPA claims. As relevant here, the VPPA excepts from liability disclosures of consumer information to third parties where, *inter alia*, the user has provided "informed, written consent," and "the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2)(B)(iii).

The Amended Complaint evades the clutches of that exception. The Amended Complaint alleges that "[e]ven after visitors affirmatively toggle off the sale or sharing of personal information and reject all non-required cookies, the Website continues to deploy and transmit data via third-party tracking tools." (AC ¶ 5; *see also id.* ¶ 124.) Thus, the factual allegations of the Amended Complaint rebut the notion that consumers have provided written consent to the challenged disclosures, let alone that BBC "provided an opportunity . . . for the consumer to withdraw on a case-by-case basis." 18 U.S.C. § 2710(b)(2)(B)(iii).

Separately, BBC moves to strike Plaintiff Chisholm's class action claims because he agreed to a class action waiver in the Subscription Terms. (Mem. at 32; *see also* ECF No. 35-5 § 11.) Indeed, the Subscription Terms establish that "any and all disputes . . . connected with

these Subscription Terms and/or any digital subscription(s) will be resolved without resort to any form of class action." (ECF No. 35-5 § 11.) On its face, this provision appears to preclude class action litigation with respect to Chisholm and the Subscriber Subclass.

Nevertheless, the Court defers its ruling on BBC's motion to strike until the class certification stage. *See Lanham v. MLBAM Adv. Media, L.P.*, No. 25-CV-7780, 2026 WL 2942683, at *9 (S.D.N.Y. Sep. 30, 2026) ("declin[ing] to address the class-action waiver argument at" the motion to dismiss stage and collecting cases holding that "the court is best equipped to rule on the enforceability of a class-action waiver in the context of a motion for class certification" (cleaned up)). The Court concludes that such deferral is warranted because a more fulsome record may shed light on issues that are relevant to the Subscriber Subclass's viability, such as the potential unconscionability of the class action waiver. *See Newman v. GREP Atl., LLC*, No. 25-CV-178, 2026 WL 810318, at *5 (S.D.N.Y. Mar. 24, 2026).

**F. The GBL**

Plaintiff Sale, a citizen of New York, brings claims for deceptive business conduct and false advertising in violation of GBL §§ 349-50. (*See* AC ¶¶ 15, 252-277.) The standards for those claims are "identical," so "the Court will merge its analysis of the two claims." *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 300 (S.D.N.Y. 2023) (quotation marks omitted). "To state a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.* (quotation marks omitted).

Putting aside the first two elements, the Court concludes that Sale's GBL claims fail because they do not allege a cognizable injury. In arguing to the contrary, Plaintiffs contend that "allegations as to loss of control over and diminution of value of personal data . . . are sufficient to support GBL § 349 at the pleadings stage." (Opp. at 38.) The Court disagrees.

It is true that the "actual harm" standard does not require monetary loss. *See Stutman v. Chem. Bank*, 709 N.Y.S.2d 892, 896 (2000) ("[A] plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm."). Nevertheless, Sale's alleged injury does not satisfy that standard. The Amended Complaint alleges that BBC disclosed Sale's "personal, device, and technical identifiers," such as his "device type, operating system, browser type[,] . . . email address[]; and approximate geolocation data," before transmitting that data to third parties "for use in advertising and marketing activities." (AC ¶¶ 6, 26.) "State court judges in New York have held that similar invasion-of-privacy allegations do not meet the GBL's injury requirement." *Cohen v. Casper Sleep Inc.*, No. 17-CV-9325, 2018 WL 3392877, at *8 (S.D.N.Y. July 12, 2018) (collecting cases); *see also Shostack v. Diller*, No. 15-CV-2255, 2016 WL 958687, at *5 (S.D.N.Y. Mar. 8, 2016) ("Plaintiff merely pleaded an unquantifiable injury to a privacy interest, which is not a cognizable injury." (quotation marks omitted)).

Indeed, courts have rejected theories of harm premised on the collection of comparable consumer data that "merely" leads to their being "offered products and services which they were free to decline." *Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102 (2d Dep't 2002). "[T]his data, at least in the abstract, occupies a lower level in the hierarchy of sensitive information as compared to SSNs . . . and medical records." *Mount v. PulsePoint, Inc.*, No. 13-CV-6592, 2016 WL 5080131, at *12 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x. 32 (2d Cir. 2017) (summary order), *as amended* (May 3, 2017).[12]

[12] One court in this district concluded that allegations of "collection of personal information" satisfied the GBL's actual injury requirement. *Bose v. Interclick, Inc.*, No. 10-CV-9183, 2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011). Like other courts, however, this Court declines to follow *Bose*'s abbreviated reasoning. *See Cohen*, 2018 WL 3392877, at *9.

The two cases cited by Plaintiffs do not persuade the Court to the contrary. *Kane v. University of Rochester* found injury under the GBL on a loss of privacy theory, but only where the plaintiff *paid* the defendant for its services and therefore "suffered financial losses related to payments they would not have otherwise made." No. 23-CV-6027, 2024 WL 1178340, at *17 (W.D.N.Y. Mar. 19, 2024). Because Sale made no such payment (*see* AC ¶ 15 (alleging that Sale "maintains a free registered account with BBC")), the injury in *Kane* premised on a "benefit of the bargain" theory is distinguishable. *Kane*, 2024 WL 1178340, at *17. Additionally, the out-of-circuit decision in *Strong v. LifeStance Health Group, Inc.* lacks persuasive force, especially because it did not cite any case law in determining that a plaintiff's mere expectations of confidentiality satisfy GBL's injury requirement. No. CV-23-682, 2025 WL 317552, at *9 (D. Ariz. Jan. 28, 2025).

Because Sale fails to sufficiently allege "actual injury" under the GBL, the Court grants BBC's motion to dismiss the GBL claims.

**G. The UCL**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A private action under the UCL requires the plaintiff to have "lost money or property as a result of the unfair competition." *Id.* § 17204. "The lost money or property requirement requires a plaintiff to demonstrate some form of economic injury as a result of his transactions with the defendant." *Morrow v. Ann Inc.*, No. 16-CV-3340, 2017 WL 363001, at *4 (S.D.N.Y. Jan. 24, 2017) (cleaned up). "This economic injury requirement is 'more restrictive than federal injury in fact because it encompasses fewer kinds of injuries.'" *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 287 (S.D.N.Y. 2023) (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017)).

Here, Plaintiffs allege that they have statutory standing because they "visited the Website reasonably expecting that BBC would collect and share their data only as disclosed and authorized," and BBC's unauthorized disclosures "constitute an injury to money or property sufficient for UCL standing." (Opp. at 34; *see also* AC ¶ 250 ("Because of Defendant's UCL violations described above, Plaintiffs suffered injury by losing control of their personal data and having their personal information tracked and recorded without their consent.").) Not so. "[D]isclosure of personal information alone does not constitute economic or property loss sufficient to establish UCL standing, unless the plaintiff provides specific allegations regarding the value of the information." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 748 (N.D. Cal. 2023) (collecting cases). The Amended Complaint fails to allege the requisite "specific allegations regarding the value of [Plaintiffs'] information." *Id.*

Plaintiffs do not, for instance, "allege specific facts showing that [they] could have sold the limited data collected by [BBC] . . . , that [they have] ever attempted or intended to sell [their] data, or that [BBC's] collection of that data, without more, has impeded [their] ability to sell [their] data." *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 977 (C.D. Cal. 2023). As a result, Plaintiffs lack statutory standing to pursue their UCL claims because their "theory of economic loss is purely hypothetical." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019); *see also Martin*, 657 F. Supp. 3d at 287 (dismissing UCL claim where "Plaintiff's injury consists solely of the alleged disclosure of private information"). The Court therefore dismisses Plaintiffs' UCL claim.

**H. Common-Law Unjust Enrichment**

Finally, Plaintiffs bring a claim for common-law unjust enrichment. (*See* AC ¶¶ 292-296.) As an initial matter, the Court applies New York law to Plaintiffs' unjust enrichment claim. Neither party argues that there is an actual conflict between New York law and the laws

of Plaintiffs' home states with respect to Plaintiffs' unjust enrichment claims. (*See generally* Mem.; Opp; Reply.) Indeed, according to Plaintiffs, "the essence of an unjust enrichment claim" is the same across "New York, California, Alaska, and Massachusetts law." (Opp. at 38-39.) "Because no conflict has been demonstrated between the relevant law of New York and California," as well as Alaska and Massachusetts, "and because both parties primarily cite New York law in their briefing, the Court applies New York law." *FritzCo LLC v. Verizon Communications Inc.*, No. 21-CV-10432, 2026 WL 734776, at *5 (S.D.N.Y. Mar. 16, 2026); *see also Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 557 n.1272 (S.D.N.Y. 2014) ("In the absence of a party's demonstration of a conflict of laws, the law of the forum, here New York, applies."), *aff'd*, 833 F.3d 74 (2d Cir. 2016).

Under New York law, a claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Price v. L'Oréal USA, Inc.*, No. 17-CV-614, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) (quotation marks omitted). Unjust enrichment "is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). When unjust enrichment claims rely "on the same facts as [] other causes of action in tort," courts dismiss them as "duplicative." *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017); *see also Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *10 (E.D.N.Y. Feb. 13, 2020) (dismissing unjust enrichment claim that "merely duplicate[d] the plaintiffs' other claims, which arise out of the same alleged misrepresentations").

Here, Plaintiffs' unjust enrichment claim fails because it duplicates their other claims. The Amended Complaint alleges that BBC "obtained a benefit by collecting, processing, and

enabling Tracking Entities' monetization of Plaintiffs' . . . Sensitive Information," and that BBC did so "without valid consent" and "in breach of [BBC's] representations to visitors." (AC ¶¶ 294-295.) These allegations replicate the allegations underlying Plaintiffs' other tort claims. (*See, e.g.*, AC ¶¶ 180, 204, 223, 237-238, 243-244, 255-256, 269-270, 272.) In Plaintiffs' words, "[a] single injury underlies every count here: BBC's non-consensual disclosure of Plaintiffs' Sensitive Information, including PII, to third parties." (Opp. at 18.) Plaintiffs cannot repackage that "single injury" into a claim for unjust enrichment. *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) ("Buonasera is alleging tort causes of action and is relying on the same set of facts for these causes of action as he is for the unjust enrichment claim. Because Buonasera fails to show how the unjust enrichment claim is not duplicative, it should be dismissed."); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) ("[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."). Thus, Plaintiffs' unjust enrichment claim is dismissed.

### I. Leave to Amend

The Court denies Plaintiffs' threadbare request for leave to amend because it does not specify "how amendment would cure the pleading deficiencies in [the] complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Plaintiffs may renew their request for leave in a motion that "make[s] a showing that the complaint's defects can be cured." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam).

## IV. Conclusion

For the foregoing reasons, BBC's motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part, Plaintiffs' letter motion for leave to file the Surreply is

GRANTED, and BBC's motion to strike is DENIED without prejudice. The motion to dismiss is denied as to Plaintiffs' VPPA claim and granted as to Plaintiffs' remaining claims.

BBC shall file an answer to Plaintiffs' VPPA claim within fourteen days of the date of publication of this Opinion and Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is directed to close the motions at ECF Nos. 23, 33, and 44.

SO ORDERED.

Dated: November 5, 2026
New York, New York

J. PAUL OETKEN
United States District Judge